73 P.3d 102

**TRINITY UNIVERSAL INSURANCE COMPANY, a foreign corporation, Plaintiff–Appellant,**

v.

**Benedict KIRSLING, Defendant,**

**and**

**Lynette Marco, Defendant–Respondent.**

No. 28581.

Supreme Court of Idaho, Boise, April 2003 Term.

July 2, 2003.

Law Office of Susan K. Servick, P.C., Coeur d'Alene, for appellant. Susan K. Servick argued.

Evans, Craven & Lackie, P.S., Spokane, Washington, for respondent. Everett B. Coulter Jr. argued.

KIDWELL, Justice.

Trinity Universal Insurance Company (Trinity) filed suit against Benedict Kirsling (Kirsling) and Lynette Marco (Marco) to recover payment made under a fire insurance policy for damage to a residence. Trinity alleged that Kirsling's intentional act caused the loss. Marco contended that she was nonetheless allowed to recover under Trinity's insurance policy because she was an innocent co-insured. Trinity and Marco filed cross motions for summary judgment. The district court found, as a matter of law, Marco could retain the money Trinity paid her under the policy as a result of the loss to her interest in the property. The district court granted Marco partial summary judgment and Trinity filed this interlocutory appeal. We affirm the district court's grant of partial summary judgment and remand this case for further proceedings.

## I.

### FACTS AND PROCEDURAL BACKGROUND

The parties do not dispute the relevant facts underlying this matter.

In 1997, Kirsling and Marco, then husband and wife, owned a home in Sandpoint (the home). The home was Marco's separate property purchased with money from a property settlement from a previous marriage.

Marco and Kirsling purchased homeowners' insurance from Trinity, effective from November 10, 1996, to November 10, 1997. Marco and Kirsling were each "in-

sured" under the policy. The policy excluded coverage for "intentional loss." The policy defined "intentional loss" as: "any loss arising out of any act committed: (1) by or at the direction of an 'insured'; and (2) with the intent to cause a loss." The policy also stated, "[t]he entire policy will be void if, whether before or after a loss, an 'insured' has: [1] Intentionally concealed or misrepresented any material fact or circumstance; [2] Engaged in fraudulent conduct; or [3] Made false statements relating to this insurance."

On June 22, 1997, the home and its contents burnt. Marco and Kirsling notified Trinity of the loss on June 23, 1997. On May 4, 1998, Trinity paid Marco and Kirsling $183,676.05 and, in exchange, Kirsling and Marco signed a partial release.

On October 25, 1999, Kirsling was convicted of arson and insurance fraud in connection with the fire at the home. On December 15, 1999, Trinity filed suit against Kirsling and Marco to recover the money Trinity had paid as a result of damage to the home.

Trinity and Marco filed cross motions for summary judgment. On June 27, 2001, the district court heard argument on the motions. At argument the court noted that Kirsling had not responded to Trinity's motion for summary judgment and the court later granted summary judgment against Kirsling. Kirsling does not appeal. On July 24, 2001, the court entered a memorandum decision and order granting summary judgment in favor of Marco. The court found that the language of Trinity's policy unambiguously barred Marco from recovering for her loss and that the Policy did not violate Idaho insurance law. Nonetheless, the court found that Trinity's exclusion of coverage for an innocent co-insured spouse violated public policy. Trinity sought, and the district court granted, permission for an interlocutory appeal of the court's order granting partial summary judgment in favor of Marco.

## II.

## STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. When reviewing an appeal from a grant of summary judgment, this Court employs the same standard used by the district court originally ruling on the motion. . . .

*Murphy v. Union Pac. R.R. Co.*, 138 Idaho 88, 90, 57 P.3d 799, 801 (2002) (quoting *Northwest Bec–Corp. v. Home Living Serv.*, 136 Idaho 835, 838–39, 41 P.3d 263, 266–67 (2002)).

## III.

## ANALYSIS

### A. The District Court Properly Granted Partial Summary Judgment To Marco.

■ As the facts of this case are undisputed, the issue is whether Marco's loss is covered by Trinity's policy, thus entitling her to judgment as a matter of law. The analysis necessary to determine whether Marco's loss is covered under Trinity's insurance policy is two-fold. *See Watson v. United Serv. Auto. Ass'n*, 566 N.W.2d 683, 689 (Minn.1997). First, courts consider whether the language of Trinity's policy excludes coverage for an innocent co-insured. *Id.* Second, in states with statutory standard fire policies, such as Idaho has adopted in I.C. § 41–2401, even if the policy language excludes coverage, courts consider whether the policy provides the coverage required by the standard fire policy. *Watson*, 566 N.W.2d at 689.

### 1. In the absence of the standard policy, the words of both the "intentional acts" exemption and the "concealment or fraud" exemption would prevent recovery by Marco, an innocent co-insured.

Trinity argues that the district court correctly found that use of the words "an insured," like "any insured," unambiguously creates a joint obligation among the insured to refrain from intentionally causing loss or defrauding Trinity. Marco, in contrast, contends that the words "an insured" may be

read as singular or plural and are, therefore, ambiguous; they may reasonably be read to create a joint- or several-obligation amongst co-insureds. This Court should, Marco asserts, construe the ambiguity against the policy's drafter, Trinity, and hold that it provides coverage for an innocent co-insured.

■■■ "Insurance policies are a matter of contract between the insurer and the insured." *Gordon v. Three Rivers Agency, Inc.*, 127 Idaho 539, 542, 903 P.2d 128, 131 (Ct.App.1995) (citing *Brinkman v. Aid Ins. Co.*, 115 Idaho 346, 352, 766 P.2d 1227, 1233 (1988)). Whether a contract is ambiguous presents a matter of law subject to free review by this Court. *DBSI/TRI V v. Bender*, 130 Idaho 796, 802, 948 P.2d 151, 157 (1997) (citation omitted). Ambiguity exists when a contract term is reasonably susceptible to more than one interpretation. *Id.* at 803, 948 P.2d at 158. If a policy term is ambiguous, this Court construes it "liberally in favor of recovery, with all ambiguities being resolved against the insurer." *Gordon*, 127 Idaho at 542, 903 P.2d at 131 (citing *Foremost Ins. Co. v. Putzier*, 102 Idaho 138, 142, 627 P.2d 317, 321 (1981); *Ryan v. Mountain States Helicopter, Inc.*, 107 Idaho 150, 153, 686 P.2d 95, 98 (Ct.App.1984)).

■■■ Here, the question becomes whether the language of the intentional acts or concealment or fraud exceptions are susceptible to more than one interpretation, or whether the clauses unambiguously exclude coverage for an innocent spouse. The intentional acts exclusion stated that the policy did not cover "any loss arising out of any act committed: (1) by or at the direction of an "insured"; and (2) with the intent to cause a loss." The concealment or fraud exception stated: "The entire policy will be void if, whether before or after a loss, an 'insured' has: [1] Intentionally concealed or misrepresented any material fact or circumstance; [2] Engaged in fraudulent conduct; or [3] Made false statements relating to this insurance." Several courts have grappled with this issue of whether the "an insured" language of these and other similar clauses is ambiguous. *See Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 926 (11th Cir.1998); *Watson*, 566 N.W.2d at 683; *Volquardson v.*

*Hartford Ins. Co. of the Midwest*, 264 Neb. 337, 647 N.W.2d 599 (2002); *Taft v. W. Am. Ins.*, 1999 WL 1483437 (Ohio App.1999) (unreported).

Based on a reading of the plain, unambiguous language of the insurance contract, we hold that both the intentional acts exemption and the fraud exemption unambiguously exclude coverage for an innocent co-insured such as Marco. Our decision is in accord with the vast weight of persuasive authority from other jurisdictions. *See generally Watson*, 566 N.W.2d 683 ("We conclude that the 'an insured' language of [the] policy unambiguously bars coverage for innocent co-insured spouses"); *Volquardson*, 647 N.W.2d at 606 ("We conclude that this ['an insured' language] means, simply and unambiguously, that if a loss is caused intentionally by someone who is insured under the policy, it is not covered."); *Taft*, 1999 WL 1483437 ("[L]anguage such as that found in [the] policy, excluding coverage when "an insured" has intentionally committed the loss, unambiguously precludes a co-insured from recovery."); *but see Michigan Millers Mut. Ins. Corp.*, 140 F.3d at 926 (holding "an insured" is ambiguous and construing the policy to provide coverage for an innocent co-insured). Thus, we consider whether the unambiguous language of the policy violates Idaho insurance law.

**2. The clauses of the policy that prevent recovery by Marco provide less coverage than the standard policy in violation of Idaho insurance law and, are, therefore, unenforceable.**

■■■ Trinity argues that its intentional act exception cannot conflict with the standard policy provisions adopted through I.C. § 41–2401 because the standard policy does not include an intentional loss provision. Furthermore, Trinity notes that courts have interpreted "an insured" to be unambiguous, whereas courts have found "the insured," as used in the standard policy, ambiguous. Trinity contends that it is unlikely that the legislature intended insurance companies to use ambiguous terms in their policies. Marco, on the other hand, argues that the standard policy language adopted in Idaho

through I.C. § 41–2401 allows an innocent co-insured to recover for losses caused by another co-insured. Therefore, if Marco's loss is not covered by the language of Trinity's policy, the policy offers less coverage than the standard policy in violation of Idaho insurance law.

In I.C. § 41–2401, Idaho adopted a standard fire insurance policy. The section states in pertinent part:

(1) No fire insurer shall issue any fire insurance policy covering on property or interest therein in this state, other than on the form known as the New York standard as revised in 1943, except as follows:

. . . .

(g) An insurer may write upon the margin or across the face of the policy, or write or print in type not smaller than nonpareil upon a . . . rider . . ., provisions adding to or relating to those contained in the standard form. . . .

. . . .

(4) Any policy . . . otherwise subject to the provisions of subsection (1) hereof, which includes either on an unspecified basis as to the coverage or for a single premium coverage against the peril of fire and substantial coverage against other perils need not comply with the provisions of subsection (1) hereof, provided:

(a) *Such policy or contract shall afford coverage, with respect to the peril of fire, not less than the coverage afforded by such standard fire policy* . . . .

*Id.* (emphasis added). In light of I.C. § 41–2401, the question becomes whether the Trinity intentional acts and fraud or concealment exceptions offer less coverage than the New York standard fire policy as revised in 1943 (standard policy).

The standard policy contains the following concealment and fraud provision:

The entire policy shall be void if, whether before or after a loss, *the insured* has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in the case of any fraud or false swearing by the insured relating thereto.

(Emphasis added.) Additionally, the policy contains a clause denominated "Conditions Suspending or Restricting Insurance." This clause states in part: "Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring . . . while the hazard is increased by any means within the control or knowledge of *the insured.*" (Emphasis added).

The great weight of persuasive authority shows that courts have found language referring to "the insured," such as that found in the standard policy exemptions, provides coverage to an innocent co-insured. *See Watts v. Farmers Ins. Exch.,* 98 Cal.App.4th 1246, 120 Cal.Rptr.2d 694, 706 (2002) ("[T]he use of the term 'the insured' means that acts of each insured must be considered separately, and the penalty—loss of insurance benefits—applied only to the guilty insured. . . ."); *Volquardson,* 647 N.W.2d at 608 ("[C]ourts have determined that the phrase 'the insured' in an insurance policy creates a several obligation which excludes coverage only as to the individual insured who committed the proscribed act."); *Lane v. Sec. Mut. Ins. Co.,* 96 N.Y.2d 1, 724 N.Y.S.2d 670, 747 N.E.2d 1270, 1272 (2001) ("[T]he language "the insured" in the . . . delineates independent liabilities and obligations as to each insured to refrain from incendiary acts."); *Taft,* 1999 WL 1483437 at *5 (" '[T]he insured' applies only to the insured who committed the fraud and has no application to an innocent co-insured.") (citing *Republic Ins. Co. v. Jernigan,* 719 P.2d 331, 332 (Colo.App.1986)). We too hold that the language of the standard policy provides coverage for an innocent co-insured.

If an insured would have coverage under the standard policy, but would not have coverage under the language of the fire insurance policy issued, then the fire insurance policy issued provides less coverage than the standard policy and violates I.C. § 41–2401. *See Watts,* 120 Cal.Rptr.2d at 706 ("[S]ince . . . the standard form does not specifically state that the act of any insured will be attributed to all insureds, the intent is that . . . an innocent co-insured be able to recover for his or her proportionate share of the property."); *Borman v. State Farm Fire & Cas. Co.,* 446 Mich. 482, 521 N.W.2d 266, 270

(1994) ("[C]ourts ... have enforced against innocent insureds contractual provisions voiding policies for fraud, concealment, or intentional acts by "an" ... insured but in none of these cases did the court advert to any conflict standard policy prescribing a provision voiding the policy because of the wrongful conduct of 'the insured.' "); *Watson*, 566 N.W.2d at 692 ("We hold that, to the extent that [the] policy purports to exclude innocent co-insured spouses from coverage, it must be reformed to comply with the Minnesota standard fire insurance policy."); *Volquardson*, 647 N.W.2d at 609–10 (holding that language identical to that in the intentional acts exclusion at issue in this case failed to provide the minimum coverage required by the New York standard fire insurance policy of 1943); *Lane v. Sec. Mut. Ins. Co.*, 724 N.Y.S.2d 670, 747 N.E.2d at 1272 ("[T]o the extent that the *"Intentional Acts"* exclusion creates joint liability and bars coverage to ... an innocent insured ... the provision is unenforceable under [the standard policy].").

The standard policy would provide coverage for Marco under the facts of this case. Trinity's policy, however, purports to exclude coverage for Marco that she would have under the standard policy. Therefore, Trinity's policy provides less coverage than the standard policy in violation of I.C. § 41–2401(4)(a). This Court will not enforce those clauses of Trinity's policy that would cause the policy to violate I.C. § 41–2401(4)(a). Instead, this Court will read the policy to provide the coverage required by Idaho law. Thus, Marco may recover for her loss as an innocent co-insured.

## B. Marco Is Not, At This Time, Entitled To Attorney Fees On Appeal.

█ Marco argues that Trinity's refusal to pay amounts claimed in excess of the $183,676.05 already paid, and the unnecessary pursuit of this case, have caused Marco to incur significant attorney fees. Therefore, Marco argues that she is entitled to fees pursuant to I.C. §§ 41–1839 and 12–121. Trinity, however, contends that the issues presented in this matter are issues of first impression before this Court and this appeal

was not brought, pursued or defended frivolously, unreasonably, or without foundation. Therefore, Trinity argues that Marco's request for fees should be denied.

Section 41–1839, Idaho Code, states in pertinent part:

(1) Any insurer issuing any policy ... which shall fail for a period of thirty (30) days after proof of loss has been furnished ... to pay to the person entitled thereto the amount justly due under such policy ... shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy ... pay such further amount as the court shall adjudge reasonable as attorney's fees in such action.

. . . .

(4) Notwithstanding any other provision of statute to the contrary, this section and section 12–123, Idaho Code, shall provide the exclusive remedy for the award of statutory attorney's fees in all actions between insureds and insurers involving disputes arising under policies of insurance. Provided, attorney's fees may be awarded by the court when it finds, from the facts presented to it that a case was brought, pursued or defended frivolously, unreasonably or without foundation.

Marco has provided proof of a covered loss. Nothing in the record currently before this Court, however, shows that Trinity has failed to pay the loss, or that Marco has been compelled to bring suit to recover the loss. After resolution of the issues remaining for the district court on remand after this interlocutory appeal, the record may reflect that Trinity has failed to pay Marco amounts justly due under her policy. Consequently, while Marco is not entitled to attorney fees pursuant to I.C. § 41–1839(1) at this time, she may be entitled to attorney fees at a later date. If this becomes the case, the district court may consider the fees Marco has incurred defending this appeal in arriving at a reasonable attorney fee.

Nothing in the record suggests that this "case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 41–1839(4). Instead, this case presented novel matters of law not previously

decided by this Court. Therefore, we deny Marco's request for attorney fees pursuant to I.C. § 41–1839(4).

We also deny Marco's request for fees pursuant to I.C. § 12–121 because I.C. §§ 41–1839 and 12–123 provide "the exclusive remedy for the award of statutory attorney's fees in all actions between insureds and insurers involving disputes arising under policies of insurance." I.C. § 41–1839(4). Thus, I.C. § 12–121 is inapplicable to this case.

## IV.

### CONCLUSION

The intentional act and fraud exclusions in Trinity's policy unambiguously purports to exclude coverage for innocent co-insureds. Thus, the plain language of Trinity's policy provides less coverage than the standard policy in violation of I.C. § 41–2401. Therefore, we hold unenforceable the clauses that would cause the policy to violate Idaho law. Consequently, we affirm the district court's grant of partial summary judgment. Marco's request for attorney fees is denied, but the district court may consider costs of this appeal in determining a reasonable attorney fee if such an award becomes appropriate later in the course of this case. We award costs on appeal to Marco.

Chief Justice TROUT, and Justices WALTERS and EISMANN concur.

Justice SCHROEDER, Concurring in the Result.

I concur in the result reached by the Court but would do so on the basis that the policy is ambiguous. As such it would be construed against Trinity Universal Insurance Company, and Marco's loss would be covered by the policy.